14-1386
*E.H. v. New York City Department of Education*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8ᵗʰ day of May, two thousand fifteen.

PRESENT:

> RALPH K. WINTER,
> DEBRA ANN LIVINGSTON,
> DENNY CHIN,
>
> *Circuit Judges.*

_____

E.H., individually and on behalf of M.K., a minor,

*Plaintiff-Appellant,*

-v.-                                    No. 14-1386

NEW YORK CITY DEPARTMENT OF EDUCATION,

*Defendant-Appellee.*

_____

FOR PLAINTIFF-APPELLANT:        LAWRENCE D. WEINBERG, Esq., Bloomfield, NJ.

FOR DEFENDANTS-APPELLEES:        TAHIRIH M. SADRIEH, Richard Dearing, *for* Zachary W. Carter, Corporation Counsel of the City of New York, New York, NY.

1

**UPON DUE CONSIDERATION IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED** and **REMANDED.**

Plaintiff-Appellant E.H. is the mother of M.K., a ten year-old child who has been diagnosed with autism. During the 2010-11 school year, M.K. attended the Rebecca School – a private school for children with neurodevelopmental disorders, including autism, which uses a teaching methodology known as the "DIR/Floortime" method. Defendant-Appellee New York City Department of Education ("DOE") reimbursed E.H. for M.K.'s tuition after an independent hearing officer ("IHO") determined that the DOE failed to offer M.K. a free appropriate public education ("FAPE") as required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* On February 14, 2011, the DOE convened a Committee on Special Education to develop an Individualized Education Program ("IEP") and Behavioral Intervention Plan for M.K.'s 2011-12 school year. The resulting IEP placed M.K. in a specialized classroom within a school offering year-round services, assigned him a dedicated crisis-management paraprofessional and weekly meetings with therapists, and set academic, social, physical and behavioral goals. Many of the goals came directly from a report created by the Rebecca School.

On June 27, 2011, E.H. filed a due process complaint, arguing that the IEP failed to provide M.K. a FAPE, and expressing her intention to re-enroll M.K. at the Rebecca School and to seek tuition reimbursement under the IDEA. After a three-day hearing, the IHO agreed that M.K. had been denied a FAPE and ordered the DOE to fund M.K.'s tuition. The DOE appealed to a state review officer ("SRO") who, on July 25, 2012, reversed the IHO after concluding that the IEP was "sufficient to address the student's demonstrated needs and [was] designed to enable him to make progress." J.A. 24. E.H. then filed suit in the United States District Court for the Southern District

of New York (Daniels *J.*), seeking reversal of the SRO's decision. The parties cross-moved for summary judgment and, on March 21, 2014, the district court affirmed. This appeal followed. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

* * *

Under the IDEA, school districts must provide "all children with disabilities a free appropriate public education," which consists of "special education and related services tailored to meet the unique needs of a particular child, and . . . reasonably calculated to enable the child to receive educational benefits." *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 107 (2d Cir. 2007) (internal quotation marks omitted). Parents who believe the district has failed to offer a FAPE may enroll their child in a private school and seek tuition reimbursement, which "will be granted only if (1) the proposed IEP failed to provide the student with an appropriate public education; (2) the parent's private placement was appropriate to the child's needs; and (3) equitable considerations support the parent's claim." *Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist.*, 773 F.3d 372, 376 (2d Cir. 2014). Parents seeking reimbursement must bring their claim to state administrators – in New York, an IHO and SRO – before filing in federal court. 20 U.S.C. § 1415(i).

We review a district court's grant of summary judgment in an IDEA case *de novo*. *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 184 (2d Cir. 2012). But although we "engage in an independent review of the administrative record," we must give "due weight" to the state administrative decisions, "mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *M.H. v.*

3

*N.Y.C. Dep't of Educ.*, 685 F.3d 217, 240 (2d Cir. 2012) (internal quotation marks omitted). This often means deferring to the "final decision of the state authorities, even where the reviewing authority disagrees with the hearing officer." *Id.* at 241. Only if the SRO's decision is "insufficiently reasoned to merit . . . deference," may we disregard it in favor of the IHO's decision. *Id.* at 246.

E.H. first argues that the DOE committed both procedural and substantive errors in crafting M.K.'s Behavioral Intervention Plan because it failed to conduct a functional behavioral assessment and mischaracterized several of M.K.'s behaviors. We disagree. To begin with, under the IDEA "[t]he party requesting [a] due process hearing shall not be allowed to raise issues at the due process hearing that were not raised [in the due process complaint], unless the other party agrees otherwise." 20 U.S.C. § 1415(f)(3)(B). Although we do not apply this rule "mechanically," *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 78 (2d Cir. 2014), E.H.'s due process complaint did not so much as mention the Behavioral Intervention Plan, let alone identify these shortcomings. *See T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 170 (2d Cir. 2014). The SRO was therefore correct to find these arguments forfeited.

Moreover, the district court correctly decided that the DOE's Behavioral Intervention Plan was neither procedurally nor substantively inadequate. In New York, school districts must conduct a "full [functional behavioral assessment] for a student who exhibits behavior that impedes learning," and "develop a [Behavioral Intervention Plan] to address that behavior." *Id.* at 169. The "failure to conduct an adequate [assessment] is a serious procedural violation," but "does not rise to the level of a denial of a FAPE if the IEP adequately identifies the problem behavior and prescribes ways to manage it." *Id.* (internal quotation marks omitted). Here, the DOE evaluated

4

M.K.'s psychological reports and his progress at the Rebecca School, spoke to M.K.'s teacher, and asked E.H. for input. Because this process "adequately identifie[d]" M.K.'s "behavioral impediments" and created "strategies to address that behavior," the DOE's failure to conduct a formal assessment did not deny M.K. a FAPE. *M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 140 (2d Cir. 2013); *see also A.C. ex rel. M.C. v. Bd. of Educ. of Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 172 (2d Cir. 2009). The resulting Behavioral Intervention Plan also accurately characterized M.K.'s behavior, most notably his spitting and biting. It was not until *after* the IEP was created that M.K.'s teachers noticed changes in those behaviors, and neither E.H. nor M.K.'s teachers apprised the DOE of the changes. We therefore agree with the district court's conclusion that the Behavioral Intervention Plan was adequate.

E.H. next argues that the DOE failed to provide a FAPE because the classroom to which it assigned M.K. already had six students enrolled and therefore lacked space for him. However, when a plaintiff challenges the adequacy of an IEP, "[o]ur evaluation must focus on the written plan offered to the parents," and "[s]peculation that the school district will not adequately adhere to the IEP is not an appropriate basis for unilateral placement." *R.E.*, 694 F.3d at 195. Furthermore, as the SRO decided, the testimony on which E.H. relies does not establish that the DOE's selected classroom lacked space for M.K. The DOE's witness testified that, when the school year began in July 2011, the class had six students. But E.H. rejected the DOE's placement in June 2011, before the beginning of the school year. The DOE's witness testified that, at that time, the district anticipated that a spot in the classroom would be open for M.K. The DOE had no obligation to keep that spot available after E.H. rejected its IEP.

Finally, E.H. contends that the IEP is inadequate because it adopts goals that the Rebecca

School created for M.K., but does not require that the Rebecca School's "DIR/Floortime" teaching methodology be used to implement those goals. We have held that, because of their specialized knowledge and experience, state administrators are generally superior to federal courts at resolving "dispute[s] over an appropriate educational methodology." *M.H.*, 685 F.3d at 244. That deference is warranted, however, only if the state administrators weigh the evidence about proper teaching methodologies and explain their conclusions. *See id.* at 252; *R.E.*, 694 F.3d at 194.

In this case, neither state administrator applied its expertise to determine whether the "DIR/Floortime" methodology is necessary to implement the goals in the IEP. The IHO noted that the IEP adopts the Rebecca School's goals without requiring the use of the "DIR/Floortime" method, but did not assess whether the IEP is "likely to produce progress" toward M.K.'s goals even without that teaching methodology. *M.H.*, 685 F.3d at 224. On appeal, the SRO also failed to evaluate whether M.K. could progress without "DIR/Floortime." Instead, it concluded that the IHO should not have addressed the methodological issue because E.H. failed to raise the matter in the due process complaint. J.A. 15-16 n.7. But that decision was incorrect – E.H.'s due process complaint contained at least three objections to the IEP's failure to adopt the "DIR/Floortime" methodology. And contrary to the district court's decision, the SRO's general conclusion that the IEP was "sufficient to address the student's demonstrated needs," J.A. 24, is no replacement for a direct evaluation of the evidence on teaching methodology. As we explained in *M.H.*, a "failure to consider any of the evidence regarding . . . methodology . . . is precisely the type of determination to which courts need not defer." 685 F.3d at 252.

Although we "appreciate the[] desire to resolve this case now without further litigation, . . . . [i]t would be imprudent for this panel, without any educational expertise," to evaluate if the

"DIR/Floortime" methodology is necessary to implement the goals in the IEP. *E.M. v. N.Y.C. Dep't of Educ.*, 758 F.3d 442, 463 (2d Cir. 2014). The SRO failed to address the issue not because the record lacked evidence from which it could decide whether the IEP is appropriate, but because it committed a legal error. We therefore vacate the district court's decision and remand so that the district court can direct the SRO to determine, in the first instance, whether the DOE denied M.K. a FAPE by adopting the Rebecca School's goals without also adopting the "DIR/Floortime" methodology. *Cf. M.T. ex rel. N.M. v. N.Y.C. Dep't of Educ.*, 47 F. Supp. 3d 197, 208 (S.D.N.Y. 2014); *Y.S. v. N.Y.C. Dep't of Educ.*, 2013 WL 5722793, No. 12-civ-2590 (WHP), at *7 (S.D.N.Y. Sept. 24, 2013). If the SRO concludes that the DOE denied M.K. a FAPE, either the SRO or district court must also address whether the Rebecca School is an appropriate alternative placement and whether equitable considerations favor reimbursement. *See Hardison*, 773 F.3d at 376.

For the foregoing reasons, the judgment of the district court is **VACATED** and **REMANDED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7